UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **REPORT, RECOMMENDATION**
                                             **AND ORDER**
v.
                                             9-cr-00143-RJA-JJM
ELLIOTT FUENTES, et al.,

                    Defendants.

_____

        This case was referred to me by Hon. Hon. Richard J. Arcara for supervision of all

pretrial matters [45].[1]  Before me are the remaining pretrial motions of defendants Elliott Fuentes

(Eoannou Affirmation [161], ¶¶4-5), Hector Manuel Ramos Rivera (Torre Affidavit [99], ¶32)

and Dinorach Feliciano (Housh Affirmation [102], ¶4) seeking bills of particulars, and the

motion of defendant Rivera seeking suppression of physical evidence and electronic surveillance.

Torre Affidavit [99], ¶¶33-50.  Also before me are the government's motions for reciprocal

discovery.  [104], p. 22; [106], p.13; [168], p. 12.[2]  Oral argument was held on December 9, 2011

[191].  Following oral argument, I permitted the parties to submit supplemental briefing [196,

201].

        For the following reasons, I order that defendants' motions for bills of particulars

be denied and that the government's cross-motions for reciprocal discovery be granted; and I

further recommend that defendant Rivera's motion to suppress electronic surveillance be denied

and that his motion to suppress physical evidence be granted in part and denied in part.

_____
[1]        Bracketed references are to the CM/ECF docket entries.

[2]        All of defendants' remaining motions, with the exception of those reserved for
determination by the trial judge, were withdrawn as moot.  [191].  Defendants also join in each others
motions. Torre Affidavit [99], ¶53; Housh Affirmation [102], ¶69; Eoannou Affirmation [161], ¶67.

## BACKGROUND

Defendants are charged in an indictment with conspiring between approximately October 2007 and May 2009 to distribute 5 kilograms or more of a mixture and substance containing cocaine, in violation of 21 U.S.C. §846, and with conspiring to launder money, in violation of 18 U.S.C. §1956(h).  Indictment [1], Counts 2 and 4.  Defendant Fuentes is also charged with engaging in a continuing criminal enterprise during the same time period, in violation of 21 U.S.C. §848(a).  Id., Count 1.

## ANALYSIS

**A.      Defendants' Motions For Bills of Particulars**

Defendants seek various forms of particularization, including the identities of the indicted and unindicted co-conspirators, witnesses to the alleged overt acts, the alleged quantities cocaine in possession of the individual defendants, whether they had actual or constructive possession, the amount of money laundered, the dates/times of the transfer and delivery of currency, how defendants had knowledge that the property involved in the financial transactions were the proceeds of illegal activity.  Eoannou Affirmation [161], ¶¶4-5; Housh Affirmation [102], ¶4; Torre Affidavit [99], ¶32.  Defendant Fuentes seeks additional particularization of the continuing criminal enterprise count, including the identity of the individuals he is alleged to have acted in concert with, his relationship to these individuals, the organizational structure of the enterprise, and the amount of income he derived. Eoannou Affirmation [161], ¶¶5(a)-(e).

Defendants Fuentes and Feliciano seek this particularization "in order to adequately prepare a defense and avoid surprise at trial" (Eoannou Affirmation [161], ¶4; Housh Affirmation [102], ¶4), whereas defendant Rivera offers no explanation for why particularization is necessary. Torre Affidavit [99], ¶32. The government opposes defendants' motions, arguing that "defendants offer no specific facts or reasons, let alone legal authority, to justify a finding that further particularization is necessary in this case to prevent their unfair surprise or to preclude a later prosecution barred by double jeopardy." Government's Response [168], pp. 3, 5. I agree with the government.

A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense." United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). "In deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994).

"[B]efore a court will order the Government to provide a bill of particulars, the defendant must make a 'particularized showing of need' for the information." United States v. Gonzalez, 1994 WL 689065, *2 (S.D.N.Y. 1994). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F. 2d 1141, 1148 (2d Cir. 1984).

Defendants' generalized assertions of need are insufficient to establish their entitlement to a bill of particulars.  A "claim that the information should be provided so that [the defendant] may 'defend herself' does not constitute the 'particularized showing of need' that is required in this circuit to warrant an order directing the government to submit a bill of particulars.  [The defendant] does not allege, for example, that the language of the indictment is so vague that she does not have adequate notice of the charges against her." Gonzalez, 1994 WL 689065, *2.  Defendants also fail to cite any case law supporting their entitlement to a bill of particulars.  Under these circumstances, defendants' motions for bills of particulars are denied.

**B.       Government's Motion for Reciprocal Discovery**

The government has sought reciprocal discovery from each of the defendants ([104], p. 22; [106], p. 13; [168], p. 12) pursuant to Fed. R. Crim. P. ("Rule") 16(b).  Defendants have not opposed this request.  Therefore, the government's motions are granted.  "Defendant[s] shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F. Supp. 2d 291, 304 -305 (W.D.N.Y. 2007) (Arcara, J.).

**C.       Defendant Rivera's Motion to Suppress Electronic Surveillance**

Defendant Rivera moves to suppress the electronic surveillance and eavesdropping warrants by arguing that they were not supported by probable cause or a showing of  necessity.  Torre Affidavit [99], ¶¶35, 37.  He also argues that the intercepted communications were not properly minimized and particularized. Id., ¶36.  The government responds that "[t]o the extent that the defendant was the person against whom some the

interceptions were directed, the government concedes that he was, with respect to all of the

interception Orders, an 'aggrieved person'" Government's Response [104], pp.11-12.[3]  It also

generally argues that "the affidavits clearly show probable cause that the drugs were being

distributed and that phones were being used in furtherance of the distribution." and that "given

the nature of the conspiracy under investigation  in this case, the affidavits . . . amply set forth

facts to justify the conclusion that it was simply not feasible to employ traditional techniques to

achieve all of the objectives of the investigation".  Id., pp. 15, 19.[4]

       Neither defendant Rivera nor the government identify the specific warrants at

issue in their motion papers, leaving me to speculate as to what applications (or parts thereof)

are in dispute.  In fact, many of defendant Rivera's arguments directed at the wiretap warrants

arguments are made "[u]pon information and belief" (Torre Affidavit [99], ¶35, 36, 37, 39),

suggesting that he filed his motion without the benefit of the underlying applications.[5]

---

[3]     Although defendant Rivera does not appear to be named as a target in the wiretap applications and warrants, defendants Feliciano (Housh Affirmation [102], ¶69) and Fuentes (Eoannou Affirmation [161], ¶67) have moved to join in the co-defendants' motions and are named as targets in the applications and warrants.

[4]     In an attempt to explain its generalized arguments, the government states that "[s]ince these detailed and extensive facts set forth in each affidavit must be read as a whole . . . it is almost by definition impossible to summarize the probable cause contained within each."  Government's Response [104], p. 15.

[5]     After  the pretrial motions were briefed, I, as well as some of the defendants, were provided  with two warrants signed by New York State Supreme Court Judge Christopher J. Burns on March 27, 2009, and three warrants signed by New York State Supreme Court Judge M. William Boller on March 31, April 6, April 8, 2009.  Each warrant is for a different telephone number and supported by affidavits provided by Brian Chella, a Special Agent with the United States Drug Enforcement Administration ("DEA").  Each wiretap application incorporates by reference the earlier applications and warrants, which have also been provided.  Since not all defendants  had the benefit of  these applications when they filed their pretrial motions, I provided them with the opportunity to supplement their pretrial motions [196].  However, no supplemental motions were filed.

His arguments are also largely conclusory, boilerplate, undeveloped and bereft of any supporting case authority.  To the extent his arguments are raised in such a fashion, I consider them waived, and recommend the denial of this aspect of defendant Rivera's motion on this basis.  *See* Lyn v. Incorporated Village of Hempstead, 2007 WL 1876502, *16 n.13 (E.D.N.Y. 2007), aff'd, 308 Fed.Appx. 461 (2009) (Summary Order)("'Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); Jackson v. Thurmer, 748 F.Supp.2d 990, 1003 (W.D.Wis. 2010) ("'[A]rguments raised in a conclusory or underdeveloped manner' are 'waived'" *quoting* Pond v. Michelin North America, Inc., 183 F.3d 592, 597 (7th Cir.1999)); Rimes v. Noteware Development LLC, 2010 WL 1644693, *2 (N.D.Cal. 2010)("Mr. Noteware's third argument is that venue in this case is improper.  But this argument, as presented in the motion to dismiss, is wholly conclusory. . . . Mr. Noteware provides no explanation at all as to why venue is improper.  The Court therefore rejects Mr. Noteware's argument").[6]  Nevertheless, based upon my review of the wiretap applications, I would deny defendant Rivera's motion.

My review of the wiretap application "is not to make a *de novo* determination of the sufficiency of the application, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made."  United States  v. Diaz, 176

---

[6]     The Second Circuit has likewise held that "[i]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." Norton v. Sam's Club,  145 F.3d 114, 117 (2d Cir.), cert. denied, 525 U.S. 1001 (1998).  *See* United States v. Awan,  384 Fed.Appx. 9, 16 n.4  (2d Cir. 2010)(Summary Order), cert. denied, 131 S.Ct. 969 (2011) ("Although Awan asserts that 18 U.S.C. §2339A is also overbroad, this point is insufficiently argued in Awan's brief, and we decline to address it").

F.3d 52, 109 (2d Cir.), cert. denied, 528 U.S. 875 (1999).  *See* United States v. Bourne, 2011 WL

4458846, *11 (E.D.N.Y. 2011)("Where a defendant moves to suppress evidence obtained

pursuant to a judicially authorized wiretap on the grounds that the wiretap application was not

supported by facts sufficient to establish probable cause, or on the grounds that the Government

failed to establish that traditional investigative techniques were reasonably likely to be

unsuccessful, the trial court reviews the wiretap application only to determine whether the facts

set forth by the Government were 'minimally adequate' to support the issuing court's order").


      1.      **Probable Cause**

New York State and Federal law both "provide that a wiretap may issue only upon

a showing of probable cause to believe that communications pertaining to the designated offense

will be obtained through the wiretap.  Moreover, there must be probable cause that an offense has

been or is about to be committed. . . .   This standard of probable cause is the same as the standard

for a regular search warrant."  United States  v. Fury, 554 F.2d 522, 530 (2d Cir.), cert. denied,

433 U.S. 910 (1977).

"A judge's probable-cause determination is not overly strict.  Presented with a

warrant application, the judge must 'simply . . . make a *practical, common-sense decision*

whether, given all the circumstances set forth in the affidavit set forth before him, including the

veracity and basis of knowledge of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place.'"  United

States v. Martin, 426 F.3d 68, 74 (2d Cir. 2005), cert. denied, 547 U.S. 1192 (2006) (*quoting*

Illinois v. Gates, 462 U.S. 213, 238 (1983))(emphasis in original).  "[P]robable cause is a fluid

concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. at 232. "The inquiry turns on an 'assessment of probabilities', and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence . . . . Simply put, probable cause is a 'relaxed standard' . . . not a legal determination of legal guilt or liability." Martin, 426 F.3d at 76.

   Defendant Rivera's only challenge to the probable cause supporting the wiretap warrants is that "*[u]pon information and belief*" . . . the confidential informant sources of information used in the application were inherently unreliable and suspect", and that "there was insufficient corroboration and/or verification of such information such as to establish probable cause". Torre Affidavit [99], ¶35 (emphasis added). These arguments are belied by the affidavits submitted by SA Chella in support of the wiretap warrants, which state that "CS-1 and CS-2 have made controlled purchases of narcotics from ALEMANY, and these purchases have demonstrated that ALEMANY utilizes [the target telephone] to facilitate his drug trafficking activities." Chella's March 26, 2009 affidavit in support of the warrant for target telephone IV, ¶25. He also describes that "CS-1 is cooperating . . . to receive consideration . . . by the United States Attorneys Office . . . with regard to pending federal drug charges" and that "[t]he information provided by CS-1 has proven to be reliable and truthful" with his cooperation resulting in arrests. Chella's April 6, 2009 Affidavit, ¶11. Similar statements of CS-2's reliability are also included. Id., ¶14.

2.      **Necessity**

"While Title III allows for wiretaps in limited circumstances, law enforcement must apply for a court order before conducting such surveillance . . . and set forth 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous'". United States v. Concepcion, 579 F.3d 214, 218 (2d Cir. 2009) (*quoting* 18 U.S.C. §2518(1)(c)).[7] "'The statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods'". Id. Thus, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance." Id.

Defendant Rivera argues "*[u]pon information and belief*" that "the necessity for electronic eavesdropping was not sufficiently established and the application does not establish that conventional means of investigation were employed without success or that such conventional means of investigation would not uncover criminal activity if such existed." Torre Affidavit [99], ¶37. I disagree. The affidavits submitted by SA Chella in support of the wiretap warrants describe why the normal avenues of investigation would not suffice. For example, he discounted the use of the confidential informants he was utilizing because they "are not privy to the identities, conversations and roles of all other co-conspirators of this organization." Chella's March 26, 2009 Affidavit in support of the warrant for target telephone IV, ¶25. He also

---

[7]      New York State law (NY CPL §700.15(4)) and its federal counterpart (18 U.S.C.. §2518(1)(c)) both require a showing of necessity. *See* United States v. Young, 822 F.2d 1234, 1237 (2d Cir. 1987).

concluded that physical surveillance, though valuable, "can only lead investigators to speculate as to the purpose of these activities and cannot conclusively establish all elements of the offenses or identify all of the conspirators." Id., ¶27. The use of search warrants was dismissed by SA Chella as "premature" and "would alert the subjects to the existence of the investigation, and would prevent [the DEA] from identifying other co-conspirators or seizing additional contraband." Id., ¶28. Moreover, while interviewing some of the criminal associates of defendants Alemany and Fuentes "might yield some information as to the scope and nature of this conspiracy", SA Chella indicated that the DEA was aware of no individuals in a position close to them and willing to cooperate. Id., ¶30. Likewise, SA Chella concluded that use of grand jury subpoenas would be ineffective because only those "involved in the criminal activity at the highest levels are likely to have the requisite knowledge regarding the full scope and nature of the operation", and that immunization "may result in non-prosecution of those who are either the most culpable or are the principals of the operation." Id.

I recognize that "generalized and conclusory statements that other investigative procedures would prove unsuccessful will not satisfy Title III". Concepcion, 579 F.3d at 218. However, I disagree with defendant Rivera that SA Chella's statements concerning necessity are "conclusory and boilerplate". Torre Affidavit [99], ¶37. For example, in explaining the limitations of physical surveillance, SA Chella stated that defendants Alemany and Fuentes conducted much of their criminal activities in the area of Plymouth Avenue in the City of Buffalo and that "[t]his area . . . is virtually impossible to surveil adequately and safely by law enforcement without being spotted by lookouts". Chella's March 26, 2009 Affidavit in support of the warrant for target telephone IV, ¶27.

-10-

Significantly, "wiretapping was not the first step in the investigation".  United States  v. Howard, 350 Fed.Appx. 517, 519 (2d Cir. 2009) (Summary Order).  Pen register and trap and trace devices (Chella's March 26, 2009 Affidavit in support of the warrant for target telephone IV, ¶10), as well as confidential informants were used.  Id., ¶25.

While defendant Rivera  argues that  SA Chella's assessment of the effectiveness of a grand jury investigation is "patently inconsistent with the grand jury's power of compulsory process" (Torre Affidavit [99], ¶38), he has not moved for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  In any event, "[n]o hearing is required merely because the defendants disagree with the government's assessment of the need for a wiretap and with the judge's determination that an order is appropriate."  United States v. Sanchez-Flores, 1995 WL 765562, *5 (S.D.N.Y. 1995).

### 3.    Minimization

"Both New York and federal law require that eavesdropping 'shall be conducted in such a way as to minimize the interception of communications . . . not otherwise subject to' the eavesdropping warrant."  United States v. Vasconcellos, 658 F.Supp.2d 366, 391 (N.D.N.Y. 2009)(citing 18 U.S.C. §2518(5); NY CPL §700.30(7)).  Defendant Rivera argues "[u]pon information and belief, the interception of electronic communications was not minimized and particularized such as to comply with the requirements of federal law governing the interception of electronic communications."  Torre Affidavit [99], ¶36.

I conclude that there has been no showing that the agents' minimization efforts were sufficiently unreasonable to warrant suppression.  See United States v. Badalamenti, 1985

WL 2572, *7 (S.D.N.Y. 1985) (no minimization hearing is required "where no colorable issue has been raised by the papers"); United States v. Cirillo, 499 F.2d 872, 881 (2d Cir.), cert. denied, 419 U.S. 1056 (1974) ("In the absence of any evidence that a substantial number of nonpertinent conversations had been intercepted unreasonably, the court was justified in denying appellants' suppression motions without holding a full adversary-type hearing").  "Although the Government has failed to meet its burden pursuant to §2518(5) to demonstrate its compliance with statutory minimization requirements, the court finds that Defendant Galarza has also failed to meet her burden to demonstrate a violation of §2518(5)."  United States  v. Pierce, 493 F.Supp.2d 611, 635 (W.D.N.Y. 2006)(Arcara, J.).

Moreover, "[e]ven if the investigating agents failed to use reasonable efforts to minimize particular intercepted communications as [defendant] claims, suppression of all communications intercepted pursuant to any of the challenged wiretap orders is not the proper remedy absent a 'pervasive disregard of the minimization requirement.'"  United States v. Funderburk, 492 F.Supp.2d 223, 247 (W.D.N.Y.2007) (Arcara, J./Foschio, M.J.) (quoting Cirillo, 499 F.2d at 881 n. 7.


**E.      Defendant  Rivera's Motion to Suppress Physical  Evidence**

Defendant Rivera  moves to suppress the evidence seized from a March 30, 2009 search warrant issued by Hon. Hugh B. Scott and my  April 21, 2009 search warrant.

1.      **March 30, 2009 Search Warrant**

Judge Scott's search warrant was supported by the March 30, 2009 affidavit of

Brian M. Chella ([99-2]), a Special Agent with the Drug Enforcement Administration ("DEA").

Id., ¶1.  SA Chella's affidavit provided a brief overview of the DEA's  investigation in to the use

of commercial delivery services for the purpose of transporting narcotics and currency between

members of a drug trafficking organization (id., ¶2), including an intercepted communications on

March 29, 2009 between co-defendants Fuentes and Feliciano mentioning "Hector M. Ramos

Rivera".  Id., ¶5.

Based upon his training and experience, SA Chella interpreted the March 29, 2009

intercepted communication as discussing the shipment of narcotics or currency.  Id., ¶6.  He then

learned from Federal Express that it had a package addressed to "Hector M. Ramos Rivera" from

"Dinorach Feliciano".  Id., ¶8.  A narcotics K-9 alerted on the package for the presence of an

unknown controlled substance.  Id., ¶9.

SA Chella's affidavit attached the March 30, 2009 affidavit of Thomas J. Kolbert,

a Police Officer with the Niagra Frontier Transit Authority Police Department confirming

that"Deuce", a certified K-9 "capable of detecting the odors of marijuana, cocaine, heroin,

methamphetamine and their derivatives" detected with a positive alert and indication for the odor

of a controlled substance. Id.

Defendant argues that to the extent the search warrant was supported by

information derived by the wiretap warrants they should be suppressed.  Id., ¶42.  He also argues

that the search warrants rely upon "upon a supporting affidavit of a canine handler that is

defective and fails to provide probable cause" and "the animal's prior ability to detect prior

contraband was not set forth." Id., ¶¶44, 45.  He further argues that the search warrant's

"description is overbroad".  Id., ¶45.

      In response, the government does not challenge defendant Rivera's standing to

challenge the search warrant.  Rather, it argues that the "affidavit submitted in support of the

application for the warrant amply supports a showing of probable cause", and that "the search

warrant . . . clearly particularize the places to be searched as well as the items to be seized".

Government's Response [104], pp. 21-22. Alternatively, the government argues that even if

probable cause was lacking and the warrant was not sufficiently particularized, "the warrant was

not so facially lacking in probable cause as to preclude the executing officer's good faith reliance

thereon." Id., p. 22.

      Any claim that the application in support of Judge Scott's search warrant did not

set forth the "animal's prior ability to detect contraband" is unfounded.  The supporting affidavit

of Officer Kolbert stated that K-9 Deuce was certified and "capable of detecting the odors of

marijuana, cocaine, heroin, methamphetamine and their derivatives" [99-2].

      More compelling is defendant Rivera's argument that  the "description is

overbroad" Torre Affidavit [99], ¶45. The March 30, 2009 Search and Seizure Warrant states

> "The person or property to be searched . . . is believed to     conceal *(identify
> the person or describe the property to be seized)*:
>
> The Items set forth on the attached Schedule of Items to be Seized, all of which
> are fruits, evidence and instrumentalities of violations of Title 21, Unites States
> Code, Section 841, 846, 952 and 963". [99-2] (emphasis in original).

However, the copy of Judge Scott's March 30, 2009 search and seizure warrant attached to

defendant Rivera's pretrial motion to suppress ([99-2]) did not attach the "Schedule of Items to

be Seized" referenced in the search warrant.  This prompted me to check the original search

warrant on file with the Clerk's Office, but it too did not include the Schedule.  Therefore, I

directed the parties to confirm in writing whether or not the referenced Schedule exists, and if it

does not exist, to address in writing what effect, if any, this has on defendant Rivera's motion to

suppress physical evidence based on his argument that the "description [contained in the search

warrant] is overbroad".  March 13, 2012 Text Order [201].

       Defendant Rivera responded that he has been unable to locate the Schedule of

Items to be Seized in the Rule 16 discovery provided by the government, and that "without the

'Schedule of Items to be Seized', the warrant is clearly defective on its face, rendering the

resulting search unconstitutional."  Torre Affirmation [203], ¶¶3, 8. Since the government did not

respond to my Text Order and I have been unable to locate it on my own, I conclude for purposes

of this motion that  the referenced Schedule of Items to be Seized never existed.

       The Fourth Amendment mandates that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized."  U.S. Constitution, Amendment IV.

"A failure to describe the items to be seized with as much particularity as the circumstances

reasonably allow offends the Fourth Amendment because there is no assurance that the permitted

invasion of a suspect's privacy and property are no more than absolutely necessary."  United

States v. George, 975 F.2d 72, 76 (2d Cir. 1992). "[T]he particularity requirement guards against

general searches that leave to the unguided discretion of the officers executing the warrant the

decision as to what items may be seized."  United States v. Riley, 906 F.2d 841, 844 (2d Cir.

1990)(citing Andresen v. Maryland, 427 U.S. 463, 480 (1976)).

Without the referenced Schedule of Items to be Seized, there is no basis for the government's argument that the "search warrant . . . clearly particularize[s] the . . . items to be seized."  Government's Response [104], p. 21.  Under similar circumstances the Supreme Court has held a search warrant was in violation of the Fourth Amendment.  In <u>Groh v. Ramirez</u>, 540 U.S. 551, 554 (2004), the erroneously warrant identified the person or property to be seized as the residence being searched, rather than the firearms law enforcement was searching for.  It did not incorporate by reference the itemized list of items to be seized  that was contained  in the warrant application.  <u>Id</u>. at 555.  Under these circumstances, the Supreme Court concluded that "[t]he warrant was plainly invalid." <u>Id</u>. at 557.

I recognize that the supporting affidavit is much more particular in requesting permission "to search the contents of the . . . package for controlled substances". Chella's March 30, 2009 Affidavit [99-2], Wherefore Clause.  However, "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents."  <u>Groh</u>, 540 U.S. at 557.  "Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it."  <u>United States v. George</u>, 975 F.2d 72, 76 (2d Cir. 1992).

Alternatively, the government relies <u>United States v. Leon</u>, 468 U.S. 897, 922-923 (1984), to argue that "the warrant was no so facially lacking in probable cause as to preclude the executing officer's good faith reliance thereon."  Government's Response [104], p. 22.  I disagree.  A search warrant issued by a magistrate judge "normally suffices to establish that a law enforcement agent has acted in good faith in conducting the search." <u>Leon</u>, 468 U.S. at 922. ''The burden is on the government to demonstrate the objective reasonableness of the officers'

good faith reliance' on an invalidated warrant . . . . In assessing whether it has carried that

burden, we are mindful that . . . that most searches conducted pursuant to a warrant would likely

fall within its protection." United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011). Four

circumstances have been identified where the good faith presumption of reasonableness will not

apply to preserve evidence from suppression: "(1) where the issuing magistrate has been

knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3)

where the application is so lacking in indicia of probable cause as to render reliance upon it

unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is

unreasonable." Id.

   This search falls within the fourth circumstance. "Because petitioner did not have

in his possession a warrant particularly describing the things he intended to seize, proceeding

with the search was clearly 'unreasonable' under the Fourth Amendment." Groh, 540 U.S. at

563.[8] "[E]ven a cursory reading of the warrant in this case—perhaps just a simple

glance—would have revealed a glaring deficiency that any reasonable police officer would have

known was constitutionally fatal." Id. at 564.

   In Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 702 (2009), the Court

acknowledged that "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent

conduct", and stated that the rule should continue to apply where the conduct at issue is

"sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that

such deterrence is worth the price paid by the justice system". *See also* United States v. Julius,

---

[8]  "[T]he Court has made clear since Leon that . . . the objective inquiries underlying the good faith exception and qualified immunity are the same". United States v. Rosa, 626 F.3d 56, 66 (2d Cir. 2010), cert. denied, ___ S.Ct. __, 2012 WL 603093 (2012).

610 F.3d 60, 68 (2d Cir. 2010) ("We emphasize that *Herring* should not serve as an enticement for law enforcement personnel to depart from search procedures which comply with the Fourth Amendment.  Rather, *Herring* requires careful consideration by district courts of whether the goal of deterring violations of the Fourth Amendment outweighs the costs to truth-seeking and law enforcement objectives in each case").  However, "[t]his case does not involve the sort of police error or misconduct present in *Herring*.  Like *Groh*, it instead deals with particularization of search warrants and whether they are facially deficient. . . . *Herring* does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*." United States v. Lazar, 604 F.3d 230, 237-238 (6th Cir. 2010), cert. denied, 131 S.Ct. 973 (2011).  Therefore, I recommend suppression of the physical evidence seized pursuant to the March 30, 2009 search warrant.


**2.**      **April 21, 2009 Search Warrant**

On April 21, 2009 I signed a search warrant for a second package, which was also supported by the an affidavit by SA Chella [99-2].[9]  It rehashed the contents of the application submitted in support of the March 30, 2009 search warrant, and stated that that search revealed "a large quantity of currency".  Id., ¶6.  To avoid compromising the DEA investigation, the currency was placed back in to the package and continued in transit.  Id.

According to SA Chella, it was believed that a controlled substance would be shipped in return for these funds, prompting the search and seizure of a package containing cocaine mailed to a suspected member of the drug trafficking organization. Id., ¶7  During

---

[9]       No party has objected to me sitting in review of my search warrant.

subsequent intercepted communications, the DEA learned that defendant Fuentes believed that the drugs were stolen, and asked his source to provide him with a new shipment of cocaine.  Id., ¶8.  On April 20, 2009 agents intercepted a telephone call between defendants Fuentes and Feliciano in which Fuentes asked Feliciano how the money was packaged when she sent it on March 30, 2009, and also asked her for the address of defendant Rivera which he had previously provided to her.  Id., ¶9.

The DEA then conducted surveillance around the home of defendant Fuentes and observed defendant Feliciano exiting with a package and proceeding to a FedEx Kinkos on Elmwood and Hertel Avenues in the City of Buffalo, where she left the package.  Id., ¶10.  According to SA Chella, this was the same FedEx drop off location she had used on March 30, 2009, and the package had the same dimensions as the box searched on March 30, 2009.  Id.  At SA Chella's request, the package was subjected to a K-9 inspection, and he was "informed that the K-9 Unit alerted to the package and its handler has indicated the package contains at least traces of a controlled substance".  Id., ¶11.  However, unlike the search warrant application presented to Judge Scott, SA Chella's affidavit did not attach an affidavit from the K-9 handler.

Significantly, defendant Rivera does not argue that this search warrant should be suppressed as the fruit of the March 30, 2009 search warrant.  Rather, he repeats the arguments directed at the March 30, 2009 search warrant, including that there the "description is overbroad" (id., 50).  The April 21,  2009 search warrant stated:

> "The person or property to be searched . . . is believed to conceal
> *(identify the person or describe the property to be seized)*:
> evidence , and instrumentalities related to narcotics trafficking

and distribution in violation of Title 21, United States Code,
Sections 841 and 846." (emphasis in original).[10]

By contrast to the manifest deficiency in the March 30, 2009 search warrant,
which referenced a non-existent Schedule of Items to be Seized, defendant Rivera fails to offer
any specification, argument, or case law as to why "[t]he description is overbroad". Torre
Affidavit [99], ¶50. Therefore, I consider this argument waived. *See* Lyn, 2007 WL 1876502 at
*16 n.13. [11]

The only specific arguments raised by defendant Rivera are that  the "hearsay
allegation of a canine alert to the package . . . violates that oath or affirmation clause of the 5th
Amendment" and that "there was no showing of probable cause since the animal's prior ability to
detect contraband was not set forth". Torre Affidavit [99], ¶50. SA Chella's April 21, 2009
Affidavit stated that "[a]t my request the package was subjected to a K-9 inspection, and I am
informed that the K-9 Unit alerted to the package and that its handler has indicated the package
contains at least traces of a controlled substance". [99-2], ¶11.

Although the application presented to me did not include an affidavit from the
K-9 handler, I was entitled to rely on the hearsay statements of SA Chella concerning the K-9
inspection of the package. "[H]earsay may be the basis for issuance of the warrant so long as
there is a substantial basis for crediting the hearsay." United States v. Ventresca, 380 U.S. 102,

---

[10]     Since the search warrant was not attached to the Torre Affidavit ([99-2]), I obtained a
copy of the original from the Clerk's Office and have docketed it [206].

[11]     Evidencing the boilerplate nature of defendant Rivera's motion, he requests "that there
be an in-camera review of any testimony in support of the *state court warrants* for a probable cause
determination by the Court." Torre Affidavit [99], ¶¶43, 48 (emphasis added).

108 (1965).  *See* United States v. Mikelic, 2011 WL 4368565, *5 (D.Conn. 2011)(finding that a

search warrant that was not supported by an affidavit from the K-9's handler to be sufficient).

Moreover, even if I was not entitled to rely on the hearsay statements of SA

Chella or were to determine that this aspect of his affidavit was deficient by not setting forth the

K-9's prior reliability in detecting narcotics,[12] the remaining aspects of SA Chella's Affidavit

established  probable cause for the search.  *See* United States  v. Johnson, 660 F.2d 21, 22 (2d

Cir. 1981) ("the search warrants were not based on the dog's reactions alone; rather, the

supporting affidavit discloses a variety of factors indicating that appellant might have been

transporting drugs").

Therefore, I recommend that defendant Rivera's motion to suppress physical

evidence seized pursuant to the April 21, 2009 search warrant be denied.

## CONCLUSION

For these reasons, I order that defendants' motions for bills of particulars be

denied and that the government's cross-motions for reciprocal discovery be granted; and I further

recommend that defendant Rivera's motion to suppress electronic surveillance be denied and that

his motion to suppress physical evidence be granted to the extent it seeks suppression of physical

evidence seized pursuant to the March 30, 2009 search warrant, but otherwise be denied.  Unless

otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order

---

[12]     "Thus far, the Second Circuit does not seem to have held that evidence of a drug-sniffing
dog's reliability must be introduced before the government may rely on the dog's alert to establish
probable cause".  United States v. Rivera,  2008 WL 2229917, *5 n. 1 (D.Conn. 2008), aff'd, 353
Fed.Appx. 535 (2d Cir. 2009)(Summary Order).

must be filed with the clerk of this court by May 14, 2012 (applying the time frames set forth in

Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for extension of this deadline must be

made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial

review of [this] decision".  <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas</u>

<u>v. Arn</u>, 474 U.S. 140, 155 (1985).

      Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal</u>

<u>Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

      The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local

Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of

the proposed findings and recommendations to which objection is made and the basis for each

objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the

objections must include "a written statement either certifying that the objections do not raise new

legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district

judge's refusal to consider the objection.

Dated:  April 25, 2012

                  /s/ Jeremiah J. McCarthy
                  JEREMIAH J. MCCARTHY
                  United States Magistrate Judge